UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

**ROCKWAY & JALIA STUDEBAKER**
244 Lewisburg-Western Road
Lewisburg, OH 45338

and

**CRISTOPHER & LISA MULLINS**
6828 Torrington Drive
Franklin, OH 45005

     **Plaintiffs**
v.

**ACC CAPITAL HOLDINGS
CORPORATION AND AFFILIATE
AMERIQUEST MORTGAGE COMPANY**
1100 Town & Country Road, Suite 1200
Orange, CA 92868

**WILSHIRE CREDIT CORPORATION**
c/o Office of Counsel – John Thomas
14523 S.W. Millikan Way
Beaverton, OR 97005

**THE BANK OF NEW YORK TRUST CO.**
One Wall Street
New York, NY 10286

**CITI RESIDENTIAL LENDING INC.**
1 City Blvd. West, Suite 1500
Orange, CA 92868

**FERDIE MURPHY, JR.**
Castlebrook Appraisals
110 East Canal Street
Troy, Ohio 45373

**CASTLEBROOK REALTY INC. aka**
Castlebrook Appraisals
110 East Canal Street
Troy, Ohio 45373

     **Defendants.**

**CASE NO:**

**3 : 0 7 cv 0 4 2 1**

**JUDGE:**

**THOMAS M. ROSE**

**COMPLAINT**

**JURY TRIAL DEMAND**

FILED
JAMES BONINI
CLERK
07 NOV -5 PM 3:44
SOUTHERN DIST OHIO
WESTERN DIV DAYTON

Plaintiffs Rockway L. and Jalia L. Studebaker ("Studebakers") and Christopher and Lisa Mullins ("Mullins") (collectively "Plaintiffs") through their undersigned counsel assert violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq., against Defendant Ameriquest Mortgage Company ("Ameriquest") and ACC Capital Holdings Corporation ("ACH") as well as any assignee of any holdings of Ameriquest of ACH, including Citi Residential Lending, Inc. ("Citi") and Wilshire Credit Corporation ("Wilshire"). Claims are further asserted against Ameriquest, ACH, Ferdie Murphy ("Murphy"), and Castlebrook Realtors, Inc./Castlebrook Appraisals ("Castlebrook") for actual, compensatory and punitive damages under Ohio statutory and the common law provisions, including the Ohio Mortgage Brokers Act, O.R.C. 1322.01 et. seq, Ohio Consumer Sales Protection Act, O.R.C. 1345 et. seq. and claims asserting unconscionability. breaeh of fiduciary duty, fraud, breach of contract, negligent misrepresentation and professional negligence.

## PARTIES

1. Rockway L. and Jalia L. Studebaker are natural persons residing at 244 Lewisburg-Western Road, Lewisburg, Ohio 45338 ("Studebaker Property") whose home is the subject of this complaint.

2. Christopher and Lisa Mullins are natural persons residing at 6828 Torrington Dr. Franklin, OH 45005 ("Mullins Property") whose home is the subject of this complaint.

3. Ameriquest Mortgage Company ("Ameriquest") is a registered foreign eorporation registered in Delaware and a former licensed broker in the State of Ohio for home mortgage loans who had a number of offices located in the State of Ohio including one at 7887 Washington Village Drive, Suite 14, Dayton, Ohio 45459.

4. ACC Capital Holdings Corporation ("ACCH") is the parent company of Ameriquest Mortgage Company and the holder of the Note on the Studebaker and Mullins Properties.

5. Citi Residential Lending Inc. ("Citi") is a subsidiary of Citibank N.A engaged in originating and servicing residential and commercial mortgage loans.

6. Wilshire Credit Corporation ("Wilshire") is eorporation licensed in all 50 states servicing conforming, subprime and non-prime residential mortgage loans

7. The Bank of New York Trust Company ("Bank of New York") is a foreign corporation registered in New York State and as a foreign eorporation in Ohio acting as a holding company

for a securitized trust. Bank of New York to Plaintiff knowledge is not authorized to do business as a financial institution in the State of Ohio.

8. Ferdie Murphy, Jr.("Murphy) is a natural person who is a licensed appraiser in the State of Ohio, employed by and owner of Castlebrook Realtors, Inc.

9. Castlebrook Realtors, Inc./Castlebrook Appraisals ("Castlebrook") is an Ohio Corporation listed under the trade name of Castlebrook Appraisals, 110 E. Canal Street, Troy, Ohio 45373.

## JURISDICTION

10. Federal subject mater jurisdiction arises under fedcral question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs have causes of actions under federal laws including the Truth In Lending Act. Supplemental Jurisdiction is appropriate under 28 U.S.C. § 1367 as the supplemental claims are related to the claims that fall under original jurisdiction. These claims include all of the claims of Plaintiffs arise from the same or similar events, patterns and practices contractual agreements, and finaneial documents between Plaintiffs and Defendants and the parties are appropriately joined in herein pursuant to Civil Rule 19 and 20.

## FACTS
## THE STUDEBAKERS

11. Plaintiffs Rockaway L. and Jalia L. Studebaker sought a fixed rate refinance mortgage loan from Ameriquest in September of 2004 in order to reduce their monthly mortgage loan payment.

12. In order to obtain this loan the Studebakers contacted an Ameriquest Mortgage Company branch office located at 7887 Washington Village Drive, Suite 14, Dayton, Ohio 45459 by phone.

13. The Studebakers requested throughout the loan application process that any loan they reeeived would be a fixed rate and not have increasing payments and the Ameriquest agent continually assured them that the payments were fixed for the loan he was obtaining for the them.

14. An initial loan applieation taken by Ameriquest and its agent in September, 2004 was for a loan principal of $130,476.00 which was preparcd and submitted by the Ameriquest loan agent.

15. After completion of the initial loan application information by telephone with the Ameriquest agent, the Studebakers were told that a fixed rate loan had been obtained by Ameriquest and they were asked to meet with the agent and a title closer at Ameriquest's offices to execute the loan documents.

16. On October 16, 2004, the Studebakers were offered a 30 year, adjustable rate loan with an original principal of $137,500.00 and an initial payment of $806.79 that was fixed for two years ("Studebaker Loan"). The Studebaker Loan provided for an initial interest rate of 5.8%, fixed for two years, then increased to 7.8% at the date for adjustment. Thereafter the interest rate increased or decreased by up to 1% point per six month period, with an absolute cap of 11.8%. (*See* Ex. 1 - Mortgage Loan #0094608569-5657; Ex.2 – Adjustable Rate Note – Collectively Studebaker Loan.)

17. The Studebakers were unaware of the change of the loan to a variable rate loan and neither the title agent or Ameriquest loan officer told them of the change at the closing.

18. The Studebaker Loan resulted in the Studebakers paying Ameriquest $8,682.08 in settlement fees for the Studebaker Loan. (Ex. 3 – HUD Settlement Statement, Line 1400.)

19. The settlement fees included payment of $3,980.63 by the Studebakers to Ameriquest and listed as a Loan Discount charge fee for making the loan. (Ex. 3, Line 802.)

20. Ameriquest provided no loan discount to the Studebakers in assessing the unconscionable discount fee of $3,980.63.

21. Ameriquest further confused the Studebakers as to their cancellation rights for the Studebaker Loan by including a second right to cancel provision entitled "One Week Cancellation Period" which advised the Studebakers they had one week to cancel the Studebaker Loan. (*See* Ex. 4 - One Week Ameriquest Right to Cancel.)

22. The Studebaker Loan contained a "teaser rate" since the actual adjustable index rate (the six month Libor Rate) for this type of loan at the time of The Loan's consummation was 2.53% which translated to an effective rate of 7.78% with The Loan's index rate of 5.25%. (Ex. 1.)

23. The Studebaker Loan also provided for a loan principal of and a first adjustment to interest rates 2 years after the loan was executed with the first adjustment to be on November 1, 2006 and the interest and payment to adjust every six months after the first adjustment date. (Ex. 1 and 2.)

24. The Studebakers never received any disclosures or other information from Ameriquest as to the reasons for rejection or changes in the terms of the loan for which they applied in the original loan application.

25. As part of the process for obtaining the mortgage loan Ameriquest made the arrangements for a title search and appraisal of the Studebaker Property for Studebakers.

26. The appraisal was completed by Defendants Ferdie Murphy and Castlebrook Realtors acting as agents of Ameriquest for the fee of $400.00. (Ex. 3, line 803.)

27. The Studebaker Property was appraised by Castlebrook and Murphy for Ameriquest at a value of $145,000 ("Studebaker Appraisal"). (Ex. 5 - Universal Residential Loan Application, Table VI, Real Estate Owned.)

28. The Studebakers subsequently obtained an independent appraisal of the Studebaker Property in 2007 listing a value of $105,000. (Ex. 6 - Limited Appraisal for Current Market Value.)

29. The Studebaker Appraisal was a substantial overstatement of value of the Studebaker Property which Ameriquest, Murphy and Castlebrook knew to be false.

30. At the time of the commencement of the Studebaker Loan in 2004, Preble County valued the Studebaker Property at $85,800.00 or 59% of the Studebaker Loan appraisal. (Ex. 7 - Preble County Auditor's Base Parcel Data.)

31. Studebakers relied upon the Studebaker Appraisal submitted by Murphy and Ameriquest as a reasonable assessment of the Studebaker Property's market value.

32. The documents received by the Studebakers either before at or after closing did, did not include either a Consumer Handbook on Adjustable Rate Mortgages or a Settlement Cost and Helpful Information Book.

33. As a result of the TILA violations by Ameriquest and the misrepresentations by Ameriquest, and its agents Castlebrook and Murphy as to the appraisal value of the Studebaker Property, the Studebakers on May 30, 2007 rescinded the Studebaker Loan. (Ex. 8 - Studebaker Cancellation Letter to Ameriquest.)

34. Ameriquest acknowledged receipt of the cancellation notice on May 30, 2007 and denied the rescission action by the Studebakers (Ex. 9 - Cancellation Rejection by Ameriquest.)

35. Although a notice of rejection is required by the Equal Credit Opportunity Act ("ECOA") when a offered loan is revised, Ameriquest also failed to provide any such notice to the Studebakers regarding the initial loan offered to The Studebakers before or after the consummation of the Studebaker Loan.

5

36. Subsequent to the notice and response to Plaintiff's rescission letter, Ameriquest transferred sold or assigned servicing and ownership of the Studebaker Loan to Citi on or about October 1, 2007.

## THE MULLINS

37. Plaintiffs Christopher and Lisa Mullins sought to refinance a fixed rate mortgage from Ameriquest in early September of 2004 in order to reduce their monthly mortgage loan payment, and in order to obtain this loan the Mullins contacted an Ameriquest Mortgage Company branch office located at 7887 Washington Village Drive, Suite 14, Dayton, Ohio 45459 by phone.

38. The Mullins provided financial data and reviewed an initial loan application in which they specified that they were asking for a fixed rate loan and the Ameriquest agent, Barry Deem ("Deem") advised the Mullin's that he was obtaining a fixed rate loan.

39. At the time for consummation of the loan Deem presented the Mullins with a variable rate loan.

40. The Mullins initially refused the proposed loan because the loan was not the fixed rate loan Deem had stated he was providing.

41. Deem verbally told the Mullins to continue and sign the loan terms as written because he promised them he would refinance their loan through Ameriquest at a fixed interest rate before the interest rate changed on the adjustable rate loan.

42. When the Mullins told Deem that they would not sign the variable rate loan despite his promises to redo the loan before any interest rate changes Deem threatened the Mullins with a lawsuit and extra fees if they did not sign the loan as written.

43. Distraught over the threats of fees and a lawsuit, the Mullins proceeded to a loan closing at their home on December 16, 2004.

44. Although not explained by Deem or the title closer, the mortgage loan they were coerced into signing had initial interest rate of 7.65% including a "teaser rate" since the actual adjustable interest rate (the six month Libor Rate) for this type of loan at the time of The Loan's consummation was 2.78% which translated to an effective rate of 8.78% given the index rate of 6.0%. (Ex. 10 –Mortgage for Loan #00102176385-5657, Ex. 11- Adjustable Rate Rider for Loan #00102176385-5657- Collectively "Mullins Loan.")

45. The Mullins Loan provided the Mullins a 30 year, adjustable rate loan with an original principal of $151,000.00 and an initial payment of $1,236.76 fixed for two years. The initial interest rate was 7.65% and fixed for two years and then would increase up to 9.65% at the first adjustable rate clause. Thereafter the interest rate will not increase or decrease more than 1% point. (*See* Ex. 11.)

46. As part of the process for obtaining the mortgage loan Ameriquest obtained a title search and appraisal of the Mullins Property.

47. The appraisal was completed by Castlebrook and Murphy for the fee of $400.00. (Ex. 12 - HUD Settlement Statement.)

48. Castlebrook and Murphy, acting as agents of Ameriquest, appraised the Mullins Property at a value of $170,000.00 ("Mullins Appraisal"). (Ex. 13 - Mullins Appraisal of Property).

49. The Mullins Property is currently appraised by Warren County at a value of $138,860.00. (Ex. 14 – Warren County Appraisal.)

50. The Mullins Appraisal was a substantial overstatement of value of the Mullins Property which Ameriquest, Castlebrook, and Murphy knew to be false as is apparent by the faulty use of comparable property by the appraiser. (Ex. 13, p. 4.)

51. The Mullins Appraisal stated that only sales within the 3 years prior can be utilized in determining the value of a subject property which is consistent with the applicable binding requirements of Uniform Standards of Professional Appraisal Practice set forth in the appraisal in 2003 and that these are. (Ex. 13, p. 4.)

52. Comparable 1 in the Mullins Appraisal was the only comparable property used by Castlebrook and Murphy that had been sold within 3 years of the Mullins Appraisal. (Ex. 13, p. 4.)

53. Comparable 1 is listed as selling for $131,000 on July 31, 2002 but on the Comparable Photo Page in Exhibit B, Comparable 1 is listed as having a value of $160,000. This unexplained variation demonstrates inflating the Comparable price so as to inflate the Mullins Appraisal. (Ex. 13, p. 4.)

54. Comparable 2 is admitted in the Mullins Appraisal to be a 6 month old appraisal. (Ex. 13, p. 4.)

55. Comparable 3 is admitted in the Mullins Appraisal to be "going farther than normal" in comparing the Mullins Property to a comparable property. (Ex. 13, p. 4.)

56. Throughout the loan application process the Mullins relied on Ameriquest, Murphy and Castlebrook regarding the Mullins Appraisal as to the representation of the value of their home being $170,000.

57. On December 16, 2004 the Mullins reluctantly and under threat and duress signed the Mullins Loan.

58. The Mullins Loan resulted in the Mullin's paying Ameriquest $8,081.50 in settlement fees. (Ex. 12, Line 1400.)

59. The Mullins subsequently learned that after obtaining the HUD statement from Mortgage Information Services ("MIS"), the title agent, that Ameriquest had received $5,285.00 as a Loan Discount as part of a fee for making the Mullins Loan. (Ex. 12, Line 80L.)

60. Ameriquest provided no actual loan discount or any other financial incentive to the Mullins in assessing the unconscionable discount fee of $5,285.00.

61. Ameriquest further confused the Mullins as to their cancellation rights for the Mullins Loan by including a second right to cancel provision entitled "One Week Cancellation Period" which advised the Mullins they had one week to cancel the Mullins Loan. (Ex. 15 - One Week Ameriquest Right to Cancel.)

62. The Mullins were provided with only 2 copies of a 3 day Right to Cancel Notice at the closing instead of the required 4 copies, 2 for each borrower impacted by the Mullins Loan.

63. The Mullins were never furnished a copy of The HUD 1 Closing Settlement Statement for the Mullins Loan.

64. The Mullins were never furnished a copy of a Good Faith Estimate ("GFE") for the Mullins Loan.

65. The Mullins were never furnished a copy of a Truth in Lending Act ("TILA") Disclosure Statement.

66. Subsequent to the consummation of the Mullins Loan, it was sold and transferred for servicing to Wilshire in 2005.

67. After one year of making payments on the Mullins Loan, the Mullins sought to obtain a new loan from Ameriquest to obtain the promised fixed rate loan by Deem after he coerced them into signing the Mullins Loan.

68. Ameriquest through its agent refused to even process a loan application for a new loan for the Mullins as Deem had promised.

69. As a result of the TILA violations and the misrepresentations by Ameriquest and its agents regarding obtaining a new loan and appraisal value, the Mullins on May 1, 2007 rescinded the Mullins Loan. (Ex. 16 – Mullins Rescission Notice.)

70. Ameriquest acknowledged receipt of the cancellation notice on May 30, 2007 and denied the rescission action by the Mullins (Ex. 17 - Notice of Receipt and Rejection of Cancellation.)

71. Wilshire also acknowledged receipt of the cancellation notice on May 30, 2007 and denied the rescission action by the Mullins. (Ex. 18 - Letter from Wilshire.)

72. On reason and belief, the Mullins have now learned that other homes in their neighborhood are valued at no more than $140,000.00 market price based on 2007 fair market values.

73. Although a notice of rejection is required by the Equal Credit Opportunity Act ("ECOA") when a offered loan is revised, Ameriquest failed to provide any such notice to the Mullins regarding the initial loan offered to the Mullins either before or after the consummation of the Mullins Loan. \

## TILA AND BAIT AND SWITCH VIOLATIONS BY AMERIQUEST

74. Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs.

75. Ameriquest over a period of time between from 2001 through 2005 engaged in a pattern and practice of issuing variable or adjustable rate loans to borrowers who had requested fixed rate loans.

76. Ameriquest over a period of time between from 2001 through 2005 engaged in a pattern and practice of hiding or failing to disclose finance charges and required TILA disclosure information.

77. On Plaintiffs' information and belief, Ameriquest loan agents as a pattern and practice processed borrowers request for fixed rate loans and then switched the terms of the actual loan to an adjustable rate loan with teaser interest rates without advising a borrower of the change until the date of closing or failing to disclose the change of loan terms at all.

78. On Plaintiffs' information and belief, Ameriquest loan agents as a pattern and practice would advise borrows at a loan closing that the adjustable rate loan was for a fixed term but failed to disclose the fixed period was only for 2 years with 28 years subject to adjustable rates.

79. On Plaintiffs' information and belief, Ameriquest through its loan agents, as a pattern and practice, would advise borrows who discovered that a requested fixed rate loan was altered to an

adjustable rate loan, that they were required to sign the loan under the threat of having to pay broker and finance fees if the loan was not consummated.

80. Ameriquest and its loan agents knew or should have known that a borrower was not subject to paying finance fees and broker fees upon a borrowers refusing to consummate a loan when the terms were altered from the terms specified in the loan application.

81. Adjustable rate loans with a teaser rate are loans that offer an interest rate lower than the stated loan's rate would be if a loan's indexed rate (such as the Libor Index) were applied to the actual stated current rate of interest at the time of a loan's consummation.

82. The Libor Index or rate for adjustable rate loans is a short term interest rate that is paid on loans between banks and is calculated on daily interest quotes and specific periodic averages for such rates on a daily basis by the world financial markets.

83. On Plaintiffs' information and belief, Ameriquest through its loan agents had a pattern and practice of failing to provide a Consumer Handbook on Adjustable Rate Mortgages or a Settlement Cost and Helpful Information Book to the Plaintiffs.

84. Under the provisions of 15 U.S.C. §1637a (a)(2) and §1638(b)(2) as implemented by the U.S. Department of Housing and Urban Development ("HUD") guidelines, Regulation Z, 12 CFR §226.19(b)(1), a Charm booklet is to be provided 3 days before a loan closing and to date Plaintiffs have never received this booklet.

85. On Plaintiffs' information and belief, Ameriquest through its loan agents as a pattern and practice failed to provide the required number of 3 Day Right to Cancel Notice.

86. Two copies of the Right to Cancel notice are required to be given to each consumer at the time of closing a loan under TILA, 15 U.S.C. § 1635(a) and 12 CFR §226.15(b).

87. On Plaintiffs' information and belief, Ameriquest through its loan agents as a pattern and practice provided 3 day Right to Cancel Notices to borrowers that did not contain dates for the loan execution nor the date the rescission right expires.

88. Under the provisions of TILA, 15 U.S.C. §1635 (a) as implemented by 12 CFR §215.(b)(5) dates for rescission expiration must be disclosed in the Right to Cancel.

89. On Plaintiffs' information and belief, Ameriquest through its loan agents as a pattern and practice of providing loans to borrowers with a One Week Right to Cancel Notice in addition to the 3 day Right to Cancel Notice.

90. The conflicting dates of notice of right to cancel between the One Week Right to Cancel Notice and the 3 day Right to Cancel Notice caused confusion for the Plaintiffs as to their cancellation rights and time frames for exercising those rights.

91. Ameriquest's One Week Notice was a material mis-disclosure since it measured the expiration period differently than the 3 day Right to Cancel notice by stating that the time period starts on the day of loan signing but fails to define what constitutes one week and further fails to define whether days or the week includes or excludes non-business days.

92. Ameriquest and its loan agents by issuing multiple, confusing and non-dated Rights to Cancel notices caused such notices to obfuscate the meaning of the Right to Cancel and a failure to meet the clear, conspicuous and material disclosure requirements of TILA 15 U.S.C. §1602(u).

93. On Plaintiffs' information and belief, Ameriquest through its loan agents as a pattern and practice charged borrowers for a high and deceptive discount fee to process a loan but never actually told or advised borrowers of the fee; that it was added to the principal of the loan and that no actual discount of any amount was provided to the borrower for the discount fee.

94. Ameriquest was required to disclose finance information as to APR finance amounts and other related loan information pursuant to 15 USC §1632(a) Reg. Z 12 CFR § 226.17(a) and failed to do so by not explaining or advising borrowers of the purpose or lack of actual application of any discount for the expenditure of the discount fee.

95. The Studebaker Loan and the Mullins Loan were both refinancing of a previously existing loans and "consumer credit transactions," and therefore subject to compliance with TILA provisions (15 U.S.C. § 1601 *et seq.*) and TILA implementing regulations (Regulation Z, 12 C.F.R. § 226 *et seq.*).

96. At all relevant times pertaining to the Studebaker Loan and the Mullins Loan, Ameriquest was a creditor who regularly extended consumer credit payable by written agreement in more than four installments for which a finance charge is imposed and was subject to TILA.

97. On information and belief Plaintiffs assert that the promises to refinance adjustable rate loans were common practice and pattern of Ameriquest agents to sell adjustable rate loans at a profit to Ameriquest.

98. Ameriquest and its agents, on Plaintiffs information and belief, routinely have issued numerous loans between 2000and 2005 with inflated home market values;  material mis-disclosures or non-disclosures in violation of TILA;  and  misrepresentations as to the adverse

consequences of adjustable rate loan to borrowers on fixed incomes or regarding properties whose market values are not appropriate for adjustable rate loans.

99. On information and belief of Plaintiffs, Ameriquest and its agents routinely engaged in a practice of obtaining appraisals on borrowers property that were substantially in excess of actual market values in order to sell loans with higher principals and interest rates to make a greater profit for Ameriquest

100.    On information and belief of Plaintiffs, Ameriquest and its agents never provided and did not intend to provide any promised refinancing of adjustable rate loans because of the overappraisals that were commonly and deceptively obtained on the initial adjustable rate loans sold to borrowers.

101.    The actions of Ameriquest and its agents in connection with the Studebaker Loan and the Mullins Loan constituted bait and switch tactics and TILA violations as set forth in the preceding Complaint Paragraphs.

102.    Under the provisions of 15 U.S.C. § 1635(d), a borrower has the right to cancel a refinanced loan for 3 years after the date of consummation if there is a material violation of TILA requirements.

103.    The provisions of 15 U.S.C. § 1640(a)(1)-(3) specify that a borrower who establishes non-compliance with material provisions of TILA are entitled to actual and statutory damages as well as costs and attorney fees.


## WILSHIRE AND CITI AS ASSIGNEES


104.    Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs.

105.    Wilshire and any subsequent assignee of the Mullins Loan is liable for the actions of Ameriquest as to the stated TILA violations pursuant to 15 USC 1641(a).

106.    Citi and any subsequent assignee of the Studebaker Loan is liable for the actions of Ameriquest as to the stated TILA violations pursuant to 15 USC 1641(a).

107.    Both Citi and Wilshire are creditors who regularly extend consumer credit payable by written agreement in more than four installments for which a finance charge is imposed and which agreements and credit are subject to TILA.

## AMERIQUEST AS A MORTGAGE BROKER

108.    Plaintiffs reiterate and incorporate all allegations and statements set forth in the preeeding paragraphs.

109.    On information and belief Ameriquest is an authorized licensed broker in the State of Ohio subject to the Mortgage Broker Aet provisions of RC §1322.01 et. seq.

110.    The Studebakers have paid finance loan closing costs and finanee eharges, in the form of interest payments to Ameriquest and others, for the Studebaker Loan as of the date of the filing of this Complaint in the amount of $2,558.80 for finance closing costs and $ 21,000 in interest on the Studebaker Loan as of the date of the filing of the complaint.

111.    The Mullins have paid finance loan closing costs and finance charges, in the form of interest payments to Ameriquest and others, for the Mullins Loan as of the date of the filing of this Complaint in the amount of $2,946.65 and $20,918.68 in interest on the Mullins Loan as of the date of filing of this complaint.

112.    Ameriquest and its loan agents as brokers misrepresented and deccived the Studebakers regarding the Studebaker Loan and the Mullins regarding the Mullins Loan as to the terms of these loans which included falsification and misrepresentation of the fixed terms, interest rates, finance fees, the nature and purpose of broker finance fees, actual fair market value of borrower's property and the ability of borrowers to refinanee these loans in the future.

113.    The provisions of ORC §§ 1322.09 and .11 specify that proven misrepresentations or deceptive practices of a mortgage broker to a borrower by a broker entitle a borrowcr to actual and punitive damages ineurred by the borrower because of the broker's actions and recovery of attorney fees and eosts.

## FIRST CLAIM - TILA DISCLOSURE VIOLATIONS

114.    Plaintiffs reiterate and ineorporate all allegations and statements set forth in the preceding paragraphs. The allegations as contained in this claim are asserted against Ameriquest, Wilshire and Cit.

115.    Defendant Ameriquest failed to provide Plaintiffs with a elear and unambiguous Right to Cancel Notice in violation of TILA under 15 U.S.C. § 1635(a) and Regulation Z, 12 CFR §226.15(b).

116.    The failure to provide four copies of the Right to Cancel is a violation of TILA under 15 U.S.C. § 1635(a) and Regulation Z, 12 CFR § 226.15(b)(1) and a material violation of 15 U.S.C. § 1602(u).

117.    Defendant Ameriquest further failed to provide Plaintiffs with the required Charm Booklet explaining the variable rate terms of The Studebaker Loan as required by 15 U.S.C. §1637a(a)(2) and §1638(b)(2) as implemented by Regulation Z, 12 CFR §226.19(b)(1) at any time after Plaintiffs completed their initial loan application which is a material violation non-disclosure violation of 15 U.S.C. §1602(u).

118.    Ameriquest's issuance of the One Week Right to Cancel further confused Plaintiffs and failed to clearly convey the correct format and information required by the Right to Cancel Notice prescribed by 15 U. S.C. §1635(a) and 12 CFR §226.15(b).

119.    Ameriquest's confusing One Week Notice was a violation of TILA requirements regarding clear and conspicuous disclosure of material terms as to the Right to Cancel provisions of 15 U.S.C. §1635 and Regulation Z, 12 CFR §226.15(b) and an obvious and material non-disclosures in violation of 15 U.S.C. §1602(u).

120.    The TILA violations entitle Plaintiffs to rescind their respective loans pursuant to 15 U.S.C. §1635 (a) and (c).

121.    The TILA violations regarding rescission are applicable to assignees of loans including Wilshire with respect to the Mullins Loan and Citi with respect to the Studebaker Loan as well as and any subsequent assignees of these loans.

122.    Based on the several TILA material non-disclosure or lack of clear disclosures by Defendant Ameriquest entitles Plaintiffs to damages as set forth in this count for both actual and statutory damages, as well as attorney fees and cost under the provisions of  §1640(a)(1)-(3).

## SECOND CLAIM - MORTGAGE BROKER ACT VIOLATION

123.    Defendants reiterate and incorporate all allegations and statements set forth in the preceding paragraphs.  The allegations as contained in this claim are asserted against Ameriquest.

124.    Ameriquest, as a registered and licensed mortgage broker in the State of Ohio, are subject to the provisions of the Mortgage Brokers Act.  O.R.C. § 1322.01 *et. seq.*

125.    Ameriquest acted in a deceptive, improper, fraudulent, or dishonest manner as registered mortgage brokers in violation of the Act. O.R.C. § 1322.07(c) by initially arranging a loan that was deceitfully represented to Plaintiffs as a fixed rate loan; failing to provide a fixed rate mortgage to Plaintiffs as promised when Plaintiffs applied for their respective loans; aiding and assisting in the misrepresentation of fair market values of the Mullins and Studebaker Property; and by unlawfully coercing and threatening Plaintiffs Mullins when they initially refused to accept the variable rate loan.

126.    As a result of this transaction Plaintiffs were obligated on a variable interest rate on their homes which placed Plaintiffs in further debt on homes that exceeds the current market values as set forth in Complaint ¶¶ 27 and 45.

127.    These actions were taken with malice, ill will, and/or reckless indifference toward the Plaintiffs to enable Ameriquest to obtain a profit from the Studebaker Loan transaction and the Mullins Loan transaction.

128.    Accordingly, Plaintiffs are entitled to receive from Ameriquest both compensatory and punitive damages as well as attorney fees pursuant to ORC § 1322.11, in an amount to be determined at trial, for the injuries they suffered as a result of this transaction.

## THIRD CLAIM - BREACH OF FIDUCIARY DUTY

129.    Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs. The allegations as contained in this claim are asserted against Defendants Ameriquest.

130.    A fiduciary relationship is one with the attributes of trust, fidelity, and confidence given to another with the expectation of integrity based upon the resulting position of superiority or influence generated by these shared attributes.

131.    Defendant Ameriquest and its agents held a fiduciary relationship with the Plaintiffs based upon their contracting with Plaintiffs to provide mortgage broker services to clients requiring them to represent the Plaintiffs best interests throughout the mortgage transaction.

132.    Defendant Ameriquest breached its fiduciary duties by arranging the Studebaker Loan and the Mullins Loan so that the financing terms were contrary to the Plaintiffs best interests in that they did not receive the fixed interest rate originally asked for, knowingly caused Plaintiffs

to incur significant additional debt fare in excess of the value of their respective properties, and encumbered Plaintiffs with increased monthly mortgage payments for no benefit received.

133.    The actions of Ameriquest constitute a breach of fiduciary duty.

134.    As a result of the actions of Ameriquest, Plaintiffs have suffered emotional and financial injury

135.    The actions of Ameriquest were taken with malice, ill will, and/or reckless indifference to the Plaintiffs and therefore Plaintiffs are entitled to actual, compensatory, and punitive damages.


## FOURTH CLAIM – FRAUD


136.    Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs. This claim is asserted against Ameriquest, Murphy and Castlebrook.

137.    Defendant Ameriquest, through its agents, knowingly and falsely represented to the Plaintiffs that their homes had market values in excess of any reasonable values at the time of the appraisals as set forth in Complaint ¶¶ 27-30 and 45-53.

138.    Ameriquest, through its loan agents, falsely advised and promised Plaintiffs that they would be provided a loan with a fixed monthly payment that would never increase or which could be refinanced at a fixed rate and induced them to sign The Loan based on either a false promise as to the Plaintiffs Studebaker that the rate was fixed and coercive threats of added fees and lawsuits and an ability to refinance as to Plaintiffs Mullins when the agent knew that the monthly payment would increase and that lawsuits, added fees and refinancing would not occur.

139.    Ameriquest and its agents, on information and belief, routinely have issued numerous loans between 2000and 2005 with inflated home market values; material mis-disclosures or non-disclosures in violation of TILA; and misrepresentations as to the adverse consequences of adjustable rate loan to borrowers on fixed incomes or regarding properties whose market values are not appropriate for adjustable rate loans.

140.    The actions of Ameriquest and its agents in connection with the Studebaker Loan and the Mullins Loan subjected the Plaintiffs to a debt substantially in excess of the market value of their respective homes, which will also resulted in higher interest rates and higher monthly mortgage payments which Plaintiffs cannot avoid or cure because of the negative equity created by Ameriquest.

141.    Ameriquest and its agents engaged in activities which it knew, or reasonably should have known, were unconscionable, false and fraudulent with the express purpose of having the Plaintiffs enter into loan transaction that would result in profit to Ameriquest and their agents.

142.    The actions of Ameriquest and its agents were fraudulent, deceptive and misleading.

143.    Murphy and Castlebrook's valuation of the Studebaker Property and the Mullins Property at market values set forth in Complaint ¶¶ 27 and 45 was known by them to be false. Ameriquest knew or reasonably should have known that the appraisals were over inflated based upon a due diligence review of the appraisal information.

144.    Murphy and Castlebrook knew that Plaintiffs would rely upon the valuation by of the market value of the Studebaker Property and the Mullins Property to support the debt incurred by the Studebaker Loan and the Mullins Loan respectively.

145.    Plaintiffs relied upon the promises of Ameriquest, its agents, and the appraisal values by Murphy and Castlebrook, which false promises and misrepresentations as set forth in the preceding paragraphs of this Claim directly resulted in Plaintiffs suffering monetary damages in the form of excessive finance loan charges and debt burden in excess of market value of their respective properties.

146.    As a direct and proximate cause of Ameriquest, Murphy, and Castlebrook's actions, Plaintiffs have suffered financial injury and emotional injury which actions constitute the tort of fraud.  In the alternative, Ameriquest, Murphy and Castlebrook's actions constitute the tort of constructive fraud.

147.    These actions of these Defendants were taken with malice, ill will, reckless indifference and/or negligence toward the Plaintiffs entitling them to receive actual, compensatory, and punitive damages, in an amount to be determined.


## FIFTH CLAIM-NEGLIGENT MISREPRESENTATION

148.    Plaintiffs reiterate and incorporates all allegations and statements set forth in the preceding paragraphs.  The allegations as contained in this claim are asserted against Defendants Murphy and Castlebrook.

149.    In performing the Studebaker Appraisal and the Mullins Appraisal, Defendants Murphy and Castlebrook represented that the properties had a fair market value of approximately $145,000 (Studebaker Property) and $170,000 (Mullins Property).

150.    The Plaintiffs entered into the loan transactions with Ameriquest in reliance on

Defendant's representations as an accurate assessment of the value of the properties and, consequently, the amount of equity they possessed in the homes.

151.    Defendants did or should have specifically foreseen that Plaintiff would rely on these appraisals as an accurate valuation of their respective properties for purposes of obtaining financing.

152.    Defendants asserted as his and its own knowledge, or so positively as to imply that they had knowledge, that the fair market value of the Studebaker Property was at least $145,000, and that the fair market value of the Mullins Property was at least $170,000, when they knew that said statements were not true and accurate.

153.    As a direct result, the Plaintiffs have been injured and suffered financial loss because of Defendant's negligence. The actions of Defendant constitute the tort of negligent misrepresentation.

154.    Plaintiffs are entitled to recover compensatory damages in an amount to be determined at trial for the injuries and harm that defendants have caused to them as a result of said misrepresentations.

## SIXITH CLAIM - PROFESSIONAL NEGLIGENCE

155.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding paragraphs. The allegations in this claim closely relate to those set forth above in Claim Sixth. The allegations as contained in this claim are asserted against Murphy and Castlebrook.

156.    Defendants Murphy and Castlebrook, as a licensed real estate appraiser and registered appraisal company, acted negligently, unreasonably, and without ordinary care in conducting a real estate appraisal of the Plaintiffs' homes and failed to perform the appraisals with the prudence applicable to the appraisal profession and deviated from the customs and usages generally prevailing within the appraisal industry and as mandated by O.R.C. § 4763.13.

157.    Defendant substantially overstated the value of the properties by appraising the Studebaker Property at $145,000 which far exceeds the value assessed by Preble County of $85,800 at the time of appraisal in 2004 and the Mullins Property at $175,000 which far exceeds the value assessed by Warren County of $138,860 at the time of appraisal.

158.    When performing an appraisal for a financial lending institution, a licensed real estate

18

appraiser knows, or should know, that the appraisal it provides will be used for purposes of issuing a loan.

159.     When valuing property as such, licensed appraisers are fully aware of the borrower's identity and circumstances and that the borrower will rely upon the appraisal as a basis for any loan indebtedness to which the borrower is obligated on a mortgage placed on the property to secure the loan.

160.     By virtue of their active participation in the loan process and his awareness that the Plaintiffs would assume a significant financial obligation contingent on the appraisals, Defendants Castlebrook and Murphy knew or should have specifically foreseen that Plaintiffs would rely on the appraisals as fair representations of market values to support their respective loans.

161.     Defendants Castlebrook and Murphy, acting as a licensed appraiser and a registered appraisal company, knew or should have known that severe financial harm would result to Plaintiffs from Defendants' grossly inflated appraisal "market" value for the respective properties.

162.     As a proximate and direct result of the actions of Defendants Murphy and Castlebrook, Plaintiffs have been injured and suffered financial loss.  The actions of Defendants constitute the tort of professional negligence.

163.     Therefore, the Plaintiffs are entitled to recover compensatory damages in an amount to be determined at trial for the injuries and harm that Defendants has caused to them as a result of the Defendants' actions.


## SEVENTH CLAIM—UNCONSCIONABILITY


164.     The Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs of this Complaint.  The allegations in this claim are asserted against Ameriquest.

165.     The Studebaker Loan and the Mullins Loan also have terms which are unreasonably favorable to Ameriquest.

166.     Therefore, Ameriquest has forced the Plaintiffs into unconscionable contracts rendering the contracts unenforceable.

## EIGHTH CLAIM-BREACH OF CONTRACT

167.   The Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs of this Complaint. The allegations in this claim are asserted against Ameriquest.

168.   Ameriquest formed contracts with the Plaintiffs by charging loan discount fees in exchange for providing a discounted interest rate.

169.   Ameriquest charged $3,980.63 loan discount fee as to Plaintiff's Studebaker and $5, 285 as to Plaintiffs Mullins without ever providing any documentation describing how or even if there was a discount.

> a.   Under Plaintiffs best knowledge and belief, Ameriquest did not provide any loan discount or, if a discount was granted, the discount did not justify the stated discount fee.
>
> b.   Ameriquest's failure to provide a loan discount when the loan discount was contracted for and paid for constitutes a breach of contract.
>
> c.   Plaintiffs have suffered damages in the amount of the discount fee charged by paying for a loan discount when no such discount was granted.

## NINTH CLAIM - EQUAL CREDIT OPPORTUNITY ACT VIOLATIONS

170.   Plaintiffs reiterate and incorporate all allegations and statements set forth in the preceding paragraphs. This claim is asserted against Ameriquest.

171.   On information and belief, after Plaintiffs filed their initial loan application and credit information with Ameriquest in their application was disapproved or revised for a higher principal loan amount and a variable rate loan.

172.   On information and belief, when Plaintiffs were presented with the revised variable rate Studebaker Loan and the revised variable rate Mullins loan respectively, Ameriquest failed to advise Plaintiffs at any time before or after presenting either revised loan to the Plaintiffs that the initial loan applied for had been disapproved nor the reasons for the disapproval of the Plaintiffs' initial applications.

173.   Under the provisions of the Equal Credit Opportunity Act (ECOA) 15 U.S.C. §1691(d) a consumer denied credit for a loan application is to be notified in writing of the rejected credit and

20

the reason for such rejection or an explanation as to the material changes in the offered terms as set forth in ECOA enforcement regulations, Regulation B, 12 C.F.R. §202.9(a)(2).

174.    The actions of Ameriquest through its agent and were intentional, purposeful and recklessly done in detriment to the rights of the Plaintiffs and their credit and solely for the profit of Ameriquest and its agents.

175.    Upon information and belief, Ameriquest did not maintain procedures that are designed to adequately notify consumers of a credit rejection on their home loan mortgage applications and further has established a pattern of over-appraisals on mortgage loans processed by Ameriquest that further adversely affects the credit of mortgage loan credit applicants such as Plaintiffs

176.    The actions of Ameriquest through its agent caused Plaintiffs to suffer damages, embarrassment, humiliation and inconvenience and Ameriquest and Ferguson are liable pursuant to the provisions of ECOA, 15 U.S.C. §1691e(a) and (b) with damages to be determined at time of trial.

177.    Plaintiffs are further entitled to reasonable attorney fees and costs, pursuant to 15 U.S.C. §1691e(d).


        WHEREFORE, Defendants pray that the court enter judgment as follows:

        a.    Confirm the rescission of the Studebaker Loan and the Mullins Loan by Plaintiffs, including a declaration that the they are both void;

        b.    Order Ameriquest to return any money or property given by anyone, including any and all funds, including settlement charges of $8,682.08 as to Plaintiff Studebaker and $8,081.50 as to Plaintiffs Mullins and all subsequent interest payments paid by the Plaintiffs in connection with the Studebaker Loan and the Mullins Loan;

        c.    Award statutory damages of $2,000 each to Plaintiffs Studebaker and Plaintiffs Mullins for the Ameriquest's TILA violations of non-disclosure and/or mis-disclosure violations;

        d.    Award statutory damages of $2,000 each to Plaintiffs Studebaker and Plaintiffs Mullins for Ameriquest's failure to submit a tender offer pursuant to 15 U.S.C. §1635(c)

        e.    Award actual and punitive damages, including treble damages for violations by Ameriquest of the Ohio Mortgage Brokers Act, ORC §1322.07(c);

f.   Order a forfeiture of return of any loan proeeeds by Ameriquest to the Plaintiffs;

g.   Offset of any damages awarded to Plaintiffs against any amounts determined as owed by the Plaintiffs on their respeetive loans pursuant to tender under the TILA reseission pursuant to 15 U.S.C. §1635(e);

h.   Award aetual and punitive damages in an amount to be determined at trial based upon findings of fraud and violations of ORC §1322.07(e) by Ameriquest.

i.   Award aetual and punitive damages in an amount to be determined at trial based on fraud and negligence of Murphy and Castlebrook.

j.   Award aetual and punitive damages in an amount to be determined at trial based upon findings of fraud and 15 U.S.C. §1691e(a) and (b) by Ameriquest.

k.   Award of all reasonable attorney's fee and eosts pursuant to 15 U.S.C. §§1640(c) and 1691e(d) and ORC § 1322.11.

l.   Award $3,980.63 for breaeh of eontraet for Ameriquest's failure to provide the contracted for loan discount as to Plaintiffs Studebaker and $5,285.00 as to Plaintiffs Mullins.

m.   Award sueh other relief at law or equity as this Court may deem just and proper.


Respeetfully submitted;

Lester R. Thompson #0014841
Charles J. Roedersheimer #0020273
Attorneys for Plaintiffs
Thompson and DeVeny
1340 Woodman Drive
Dayton, OH 45432
937-252-2030
937-252-9425 Fax
les@thompsonanddeveny.com
eharles@thompsonanddeveny.com


## JURY DEMAND

Plaintiffs demand that all issues so triable be tried by a jury.